UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GHEEVARGHESE THANKACHAN,               Assigned Justice:
                                                                Honorable William C. Conner

                    Plaintiff,                         **07 CIV. 8332**

       -against-                             **REPLY AFFIRMATION**

PEEKSKILL HOUSING AUTHORITY, JOHN
TESTA, LEESTHER BROWN, ERIC HYNES,
SANDRA BOND, LORRAINE ROBINSON,

                     Defendants.
------------------------------------------------------------------x

    Defendant, John Testa, by his attorney, William J. Florence, Jr., Esq., as and for his Reply to Plaintiff's Opposition of Defendant Testa's Motion to Dismiss:

1. The first point is the comparisons to be drawn between the Mayor (of Yonkers) and the Board of Education members who were appointed by the Mayor (**U.S. vs. Yonkers, et al** 837 F2d 1181 (2nd Cir. 1987). In the Yonkers case, the mayor had the power of the Board of Education Budget (**supra page 1506**).

2. Peekskill's mayor has no control of the Peekskill Housing Authority (PHA) budget. It is controlled by the Department of Housing and Urban Development (HUD).

3. Peekskill's mayor did not solicit any members' opinions concerning the policies of the Executive Director prior to their appointment in his affidavit exhibit. To the contrary, Yonkers mayor only appointed individuals who shared his views against bussing and other hot-button issues – i.e. he packed the Board (**supra at pages 1506 and 1509**) with persons who supported his political views as related to the Board of Education agenda.

4. The Yonkers mayor actually went to the Board of Education and told them he intended to extend and exert his influence over educational polices (**id at 1506-07**). He required Board of Education candidates to declare their positions on bussing (**id at page 1509**). The Yonkers mayor went so far as to draft a Resolution to be passed requiring the candidates to declare their positions on bussing (**id. at page 1511**).

    No such event ever occurred with this co-defendant Testa.

5. The Yonkers mayor actually nominated and had people hired for non-educational jobs by and through the Yonkers Board of Education.

6. No such events have ever occurred with the Peekskill Mayor Testa relative to Peekskill Housing Authority employees.

7. The Court found that the Yonkers mayor's use of his powers of appointment and power over the budget to take actions was for his own personal aggrandizement (**id at page 1508**).

8. Plaintiff's is perseverating on what is, as to defendant Testa, a non-issue: that is the right to 'fire' in his allegations relative to the 'hire and fire' authority over appointees. If there were the power to fire (a condition contrary to fact), the argument might have relevance. Here plaintiff's cited cases prove defendant Testa's point. There can be no discharge of an appointee unless certain statutory criteria are met: the standards require there to be substantial inefficiency, neglect of duty, or misconduct in office (**see §34 Public Housing Law**). The process requires charges to be brought; an opportunity for the appointee to be heard in person or by counsel and the hearing itself must be a public proceeding (id). Any

decision is subject to appeal to the Supreme Court. Not only is the removal process distinct from the appointment process, but plaintiff's cases demonstrate the point that there can be no "firing" for reasons not connected to the public service of any appointee. ***Monaco v. Board of Commissioners Town of Lackawanna Municipal Housing Authority*** 190 AD2d 1087, 593 NYS2d 703 (4th Dept. 1993), using Public Officers Law §36, ***Greco v. McLean*** 99 AD2d 810, 472 NYS2d 140 (2nd Dept. 1984); ***Dietz v. Carpenter*** 61 AD2d 320, 403 NYS2d 128 (3rd Dept. 1978); ***Pisciotta v. Dendieval*** 41 AD2d 949, 343 NYS2d 992 (2nd Dept. 1972).

9. In this instance, plaintiff alleges a conclusory allegation without facts, instances, events or evidence. Plaintiff's opposing papers add no information to this theory.

10. Plaintiff's termination (annexed herein as ***Exhibit A***) was as a result of long standing discontent by the Board of plaintiff's behaviors. It appears from hindsight that plaintiff was grappling with the Board for the power to establish policy. Plaintiff demanded that his policies prevail. The Board demanded the implementation of HUD regulations known as 'strike one' (whereby individuals accused of crime were dispossessed from their apartments). The Board demanded implementation of HUD regulations prohibiting the housing of sex offenders and of housing persons with criminal records on three floors of Bohlman Towers.

11. The plaintiff failed to follow HUD regulations requiring rent adjustments annually. The plaintiff failed to follow HUD regulations in enforcing the "Ban List'. This is a list of individuals who have been banned from Federal property because of

earlier convictions of criminal violations, by allowing those persons to occupy apartments at Bohlman Towers.

12. As to employees, the Executive Director withheld information to the Board that an employee was stealing gasoline from the Peekskill Housing Authority. The Executive Director has hired people who have not passed the appropriate civil service test for the position held and/or the functions performed. The Executive Director withheld information to protect an employee with a criminal record who re-offended and was subsequently jailed.

13. A principal point of contention was the Executive Director not maintaining the level of security the Board was demanding. His response in refusing was to "leave it to the police".

14. Security employees failed to maintain records, failed to be present at areas where trouble and criminal activity traditionally occurred and continued to occur.

15. The Executive Director breached the confidentiality of executive sessions by disclosing to individuals a Board member's concerns of their illegal activity.

16. As to bookkeeping issues – the Executive Director failed to review the 2006 Audit report with the Board in which there were criticisms of the income verification as per HUD regulations.

17. The Executive Director's bookkeeping of records processes prevented review by others and staff professed an inability to locate requested records that appeared to be in the Executive Director's exclusive custody.

18. The final action by the Executive Director was his public statement that he makes the decisions and that he does not have to listen to the Board.

19. The Executive Director received a suspension in March 2007.  He did not modify his behaviors.  He was terminated six (6) months later.

**WHEREFORE**, affirmant respectfully requests judgment dismissing the complaint of plaintiff against the defendant Testa and for such other and further relief as shall to the Court seem just and proper.

Dated: Peekskill, New York
       March 14, 2008

_____
**WILLIAM J. FLORENCE, JR., ESQ. (WJF-6639)**