```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                        :        07 Civ. 8332 (WCC)
GHEEVARGHESE A. THANKACHAN,             :
                                                    ECF CASE
                        Plaintiff,      :

           - against -                  :          OPINION
                                                  AND ORDER
PEEKSKILL HOUSING AUTHORITY, JOHN TESTA,:
MAYOR, City of Peekskill, LEESTHER
BROWN, ERIC HINES, SANDRA BOND and      :
LORRAINE ROBINSON, sued in their
official and individual capacities,     :

                        Defendants.     :

- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

SUSSMAN & WATKINS
**Attorneys for Plaintiff**
40 Park Place, 2nd Floor
Goshen, New York  10924

MICHAEL SUSSMAN, ESQ.

      Of Counsel

LAW OFFICES OF WILLIAM J.
  FLORENCE, JR.
**Attorneys for Defendants**
One Park Place, Suite 300
Peekskill, New York 10566

WILLIAM J. FLORENCE, JR., ESQ.

      Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff, Gheevarghese A. Thankachan brings this suit against defendants Peekskill Housing Authority (the "Authority"); John Testa ("Testa") in his official capacity as Mayor of the City of Peekskill and Leesther Brown ("Brown"), Eric Hines ("Hines"), Sandra Bond ("Bond") and Lorraine Robinson ("Robinson") ("Board defendants") in their official and individual capacities, pursuant to 42 U.S.C. §§ 1981, 1983.   Plaintiff alleges that defendants violated his First and Fourteenth Amendment rights when they terminated his employment with the Authority.   Defendant Testa moved to dismiss the claim against him pursuant to FED. R. CIV. P. 12(b)(6).   For the following reasons, defendant's motion is denied.

## BACKGROUND

Plaintiff alleges the following in his Complaint.

The Authority is a municipal corporation organized pursuant to the laws of the State of New York.[1]  (Complt. ¶ 2.)  Defendant Testa was, at all relevant times, the Mayor of the City of Peekskill with the power to appoint and remove members of the Authority.[2]  (Complt. ¶ 3.)  Defendant Brown

---

[1]  "The term 'authority' means a public corporation which is a corporate governmental agency (except a county or municipal corporation) organized pursuant to law to accomplish any or all of the purposes specified in article eighteen of the constitution and includes the following municipal housing authorities . . . Peekskill housing authority . . . ."  N.Y. PUB. HOUS. LAW § 3(2).

[2]  "Except as otherwise provided by special act of the legislature, an authority shall consist of not less than three nor more than seven members. . . .  The mayor of a city or village, or the town board of a town, shall appoint the appointive members . . . ."  N.Y. PUB. HOUS. § 30(2).  "The mayor of a city or village, or the town board of a town, may remove a member of the authority for inefficiency, neglect of duty, or misconduct in office, but only after the member shall have been given a copy of the charges against him and an opportunity to be heard in person or by counsel in his own defense at a public hearing."  *Id*. § 34.

is the acting chair of the Authority and defendants Hines, Bond and Robinson are members of the Authority.  (*Id.* ¶¶ 4-5.)

Plaintiff was the Executive Director of the Authority from April 2003 until he was terminated in September 2007.  (*Id.* ¶¶ 7, 16.)  Plaintiff began working for the Authority in1983, and served as staff attorney from 1998 until April 2003.  (*Id.* ¶¶ 8-9.)  Plaintiff alleges that he performed his duties and responsibilities well; he was recognized with an award for "exemplary service to our residents" in October 2006 and the Department of Housing and Urban Development ("HUD") scored plaintiff's management operation 29 out of a maximum score of 30 for 2006.  (*Id.* ¶¶ 11-13.)

Plaintiff was born in India, is of dark complexion and his first language is Malayalam.  (*Id.* ¶ 10.)  Plaintiff alleges that on several occasions in 2006 and 2007, defendant Brown made remarks deprecating his national origin.  (*Id.* ¶ 26.)  He also alleges that, in the spring of 2007, he rebuked defendant Brown for what he felt was a racist statement by Brown that plaintiff was allowing too many Hispanics to enter the housing authority projects.  (*Id.* ¶¶ 14-15.) Plaintiff states that in the late spring or early summer of 2007 he was suspended for the alleged purpose of investigating his performance. (*Id.* ¶ 22.)  The Authority hired a law firm to determine if grounds existed to terminate plaintiff and plaintiff believes that the firm found no such grounds.  (*Id.* ¶¶ 23-24.)

Plaintiff alleges that in 2007 he revealed to HUD several examples of misconduct on the part of members of the Authority; he revealed that a contract for the installation of surveillance cameras was granted without proper bidding to a company associated with the Mayor and that Brown had made discriminatory remarks concerning Hispanic tenants.  (*Id.* ¶ 25.)

Plaintiff alleges that on or about September 13, 2007, defendants Brown, Hines, Bond and Robinson voted in a closed executive session to terminate his employment, and in informing him

of the decision they provided him with no reason for the termination. (*Id*. ¶¶ 16-18.) Thereafter, defendant Brown announced what plaintiff alleges are false reasons for the action; specifically, Brown advised the media that plaintiff had failed to evict a sex offender and had allowed convicted drug felons to remain in Authority buildings. (*Id*. ¶¶ 19-20.) After learning of these purported reasons for his termination, plaintiff, through counsel, requested a name-clearing hearing but was not provided one. (*Id*. ¶¶ 27-28.)

Plaintiff alleges that defendant Testa came to believe that plaintiff was associating with members of the Democratic party and expressed hostility toward plaintiff on this basis. (*Id*. ¶ 29.) He alleges that Testa appointed Authority members "expressly bent on ending plaintiff's tenure for political reasons." (*Id*.) He further alleges that defendant Brown harbored discriminatory animus toward him on the basis of his national origin and was hostile toward him both for his political affiliation and because he refused to engage in discriminatory practices against tenants of Authority housing. (*Id*.) Plaintiff also claims he was deprived of property and liberty interests without due process when defendants failed to provide him with a pre-termination hearing and a name-clearing hearing. (*Id*. ¶¶ 41-42.)

**DISCUSSION**

## I.    Legal Standard

A motion brought under FED. R. CIV. P. 12(b)(6) posits that the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled*

*on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421

F.3d 96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993)

(Conner, J.).   In assessing the legal sufficiency of a claim, the court may consider only the facts

alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated

in it by reference.  *See* FED. R. CIV. P. 10©; *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d

130, 138 (2d Cir. 1999);  *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177

(2d Cir. 2004) (internal quotation marks and citation omitted).  "The Supreme Court has recently held

that [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007) (internal quotation marks omitted;

alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)); *see*

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007) (determining that the Court in *Twombly* "is not

requiring a universal standard of heightened fact pleading, but is instead requiring a flexible

'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in

those contexts where such amplification is needed to render the claim *plausible*.") (emphasis in

original).   Generally, "[c]onclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S

FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d

1085, 1088 (2d Cir. 1995).  Allegations that are so conclusory that they fail to give notice of the basic

events and circumstances of which plaintiff complains are insufficient as a matter of law.  *See Martin*

*v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

**II.      Plaintiff Sufficiently States A Claim Against Testa**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting

under "color of law," deprived the plaintiff of a right, privilege or immunity guaranteed by the

Constitution or laws of the United States.  *Morris v. Eversley*, 282 F. Supp. 2d 196, 203 (S.D.N.Y.

2003).  Therefore, to survive this motion, plaintiff must adequately state a plausible claim that Testa,

acting as Mayor under "color of law," was involved in the deprivation of plaintiff's constitutional

rights.

"As a general rule, public employees may not be dismissed for the exercise of their First

Amendment rights." *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995); *Butler v. N.Y.*

*State Dep't of Law*, 998 F. Supp. 336, 339 (S.D.N.Y. 1998).  Those rights include freedom of political

speech, belief and association.  *See Elrod v. Burns*, 427 U.S. 347, 367 (1976).  Plaintiff alleges that

when Testa came to believe plaintiff was associating with members of the Democratic party, he

expressed hostility towards plaintiff.  He further alleges that Testa appointed Authority members that

would terminate plaintiff's employment for these political reasons.  Considering plaintiff's allegations

in the light most favorable to him, it is plausible that he was terminated for his affiliation with the

Democratic party, and it is plausible that the termination was therefore wrongful.  We must next

consider whether it is plausible that Testa participated in the termination.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite

to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (internal

quotation marks and citation omitted).  A defendant's personal involvement is a question of fact. *Id*.;

*see Hous. Works, Inc v. Turner*, 179 F. Supp. 2d 177, 203 (S.D.N.Y. 2001) ("Because direct

participation is a question of fact, all reasonable inferences must be drawn in favor of the non-moving

party on a motion to dismiss the complaint.").  If plaintiff has adequately alleged a plausible claim

from which we can reasonably infer that Testa was personally involved, he will survive this motion.

Because plaintiff does not allege that Testa actually terminated him, but rather that his termination

was an act of the Board defendants, we must consider whether, as alleged, it is plausible that Testa

was personally involved in plaintiff's termination by influencing the actions of the Board.

Testa had the authority, under "color of law," to appoint the Authority Board members. *See*

N.Y. PUB. HOUS. LAW § 30(2).  He also had statutory power to remove them for cause, but only after

a public hearing. *See id.* § 34.  Testa could have influenced the actions of the Board through his

appointments and his authority to remove them, which is what plaintiff alleges he did.  Testa argues

that the City has no power over the Authority because the Authority is an autonomous public benefit

corporation regulated by HUD.  (Def. Mem. Supp. Mot. Dismiss at 2-3.)  However, this argument

does not address plaintiff's argument that Testa had the ability to influence the Board through

appointments and removals.  Whether Testa did that is an issue of fact to be determined at trial. *See*

*Ello*, 531 F. Supp. 2d at 562 (on a Rule 12(b)(6) motion, "[t]he Court will accept as true [p]laintiff's

allegations, and draw all inferences in [p]laintiff's favor.")

In *United States v. Yonkers Board of Education*, the Second Circuit agreed with the district

court that the mayoral appointment of school board members and the subsequent inaction of the board

amounted to an interrelated governmental effort to preserve racial school segregation.  837 F.2d 1181,

1235 (2d Cir. 1987). The district court had found that the pattern of appointments by the mayor was

an exercise of "power over school board appointments as a means of furthering the city's segregative

objectives." *Id*. at 1215 (internal quotation marks and citation omitted). The district court found that

the mayor's appointments "contributed significantly both to the confinement of minority students to

schools in Southwest Yonkers and to the Board's failure to undo the segregative effects of these and

other practices on the schools." *Id.* It is therefore plausible that the power to appoint and remove,

even if the power to remove is constrained by statute,[3] allowed Testa to exercise influence over the

Board. That influence is enough to allege that Testa is liable under § 1983.[4]

Testa further argues that the appointment of defendant Brown in 2004 was not a substantial

causative factor in plaintiff's termination in 2007.[5] (Def. Mem. Supp. Mot. Dismiss at 3-4.) To

---

[3] Defendant states that the removal process is distinct from the appointment process and that there can be no discharge of an appointee unless certain statutory criteria are met. (Florence Reply Aff'm at 2-3.) He therefore argues that the plaintiff's argument that Testa had the authority to hire and fire is irrelevant. (Id.) We do not think it matters that the power to remove is tied to statutory criteria, for we think it plausible that the Mayor could influence the Board even if his removal powers are statutorily constrained. Additionally, the power to appoint itself gave the Mayor the power to influence the Board by appointing members to carry out any alleged unconstitutional actions he may have intended.

[4] Defendant attempts to distinguish *Yonkers Bd. of Educ.* on factual grounds. (Florence Reply Aff'm at 1-2.) These considerations, however, are not proper for a motion to dismiss. We do not determine if plaintiff has factually established that Testa influenced the Board to take unconstitutional action. We simply consider whether plaintiff's allegations are sufficient to render his First Amendment claim against Testa plausible.

For the same reason, we do not consider defendant's arguments, put forth in his Reply, that plaintiff was terminated as a result of the Board's discontent with plaintiff's behavior. These are factual issues for trial. (*Id*. at 3-4.)

[5] Defendant argues that the appointment was not a substantial causative factor in plaintiff's termination, citing New York tort law cases. (Def. Mem. Supp. Mot. Dismiss at 3.) We note that this law is inapplicable to plaintiff's claim under § 1983, and instead consider the applicable federal case law for establishing a First Amendment retaliation claim.

establish a violation of First Amendment rights, a plaintiff must demonstrate "by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him."  *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir. 2000) (internal quotation marks and citation omitted).  However, the determination of whether plaintiff establishes a *prima face* case of First Amendment retaliation is not to be made on a motion to dismiss.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-12 (2002) ("The *prima facie* case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement.")  On a motion to dismiss we are limited to an inquiry as to whether plaintiff gave defendant fair notice of a plausible basis for his claim.  *Id*. at 514.  Plaintiff alleges that Testa became hostile to him once he learned of his political affiliation, and as a result Testa influenced the Board to terminate him.  Plaintiff has met his burden on this motion.  Whether he can establish by a preponderance of the evidence that Testa influenced the Board are questions of fact for trial and we do not address them here.[6]

Finally, Testa argues that plaintiff "alleges without connecting factual allegations, how, when and in what actions, that defendant Testa influenced the Board."  (Def. Mem. Supp. Mot. Dismiss at 4 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)); *see also* Florence Reply Aff'm at 3.)  However, it is not plaintiff's burden to allege all the facts as to how, when and

---

[6]  Plaintiff states that he is not basing Testa's liability on the appointment of the Board, but rather on defendant's abuse of authority in pressuring the Board to terminate him.  (Pl. Mem. Opp. Mot. Dismiss at 7.)  Because it is plausible that Testa's power to appoint and remove Board members provided him with the power to influence the Board's actions, we accept plaintiff's allegations as true for this motion and determine that he has sufficiently pled a claim against Testa.  At this point, we need not determine whether it was the actual appointment or the continued influence that forms the basis of Testa's liability.

in what actions Testa influenced the Board.[7]  *See* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). It is enough that plaintiff sufficiently alleged facts supporting an inference that Testa was involved in his termination for unconstitutional reasons, and has thereby put Testa on fair notice of a plausible basis for his claim.[8]

## CONCLUSION

For all of the foregoing reasons, defendant John Testa's motion to dismiss is denied.

SO ORDERED.

Dated:  White Plains, New York
        June 4, 2008

                                                    *William C. Conner*
                                                    Sr. United States District Judge

---

[7] While *Mt. Healthy* does discuss the plaintiff's burden to establish that his conduct was constitutionally protected and was a motivating factor in the defendant's adverse action, it does not address the standards for a motion to dismiss and the procedural posture of the case was not a motion to dismiss; it was in fact an appeal from a bench trial.  429 U.S. at 276, 285-87.

[8] Defendant also argues that the actions of the Mayor can not be "wrapped" in an allegation of civil rights violations by defendant Brown and breach of an employment contract. (Def. Mem. Supp. Mot. Dismiss at 7.)  While this argument is unclear, we take defendant to mean that Testa can not be held liable for the alleged civil rights violations of Brown and the alleged breach of contract by the Board.  Therefore, we do not address these arguments because plaintiff is asserting a claim against Testa for violations of his First Amendment rights by influencing the Board to terminate him for his political beliefs and associations.  That is the only claim we examine on this motion.

9